## AMERICAN CAR & FOUNDRY CO. v. MERCHANTS' DESPATCH TRANSP. CO.

## KEITHLEY v. AMERICAN CAR & FOUNDRY CO. et al.

(District Court, W. D. New York. June 22, 1914. On Rehearing, July 29, 1914.)

1. SALES (§ 43*)—SALE OF PERSONALTY—FRAUD—CONCEALMENT.

Fraud in the purchase of personal property must ordinarily rest upon mistake, misrepresentation, or upon acts tending to mislead another to his pecuniary loss. The mere forbearance to make disclosure to the vendor, who is ignorant of the value of his property, even though with intent to deceive him, does not furnish a basis for equitable relief by way of rescission.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 86–92, 97–100; Dec. Dig. § 43.*]

2. PATENTS (§ 200*)—SALE OF PATENTS—RESCISSION OF CONTRACT.

Evidence considered and held insufficient to entitle a patentee to a rescission of assignments of patents on the ground that they were obtained by fraud and deceit.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 200.*]

On Rehearing.

3. EQUITY (§ 195*)—PLEADING—CROSS-BILL.

A cross-bill cannot be made an original bill in the same cause, unless the subject-matter is germane to the original bill.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 446–449; Dec Dig. § 195.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the American Car & Foundry Company against the Merchants' Despatch Transportation Company. On cross-bill by Herbert R. Keithley, intervener. Decree dismissing cross-bill.

Charles W. Pooley, of Buffalo, N. Y. (D. S. Wegg and Walter H. Chamberlin, both of Chicago, Ill., of counsel), for cross-complainant.

Parsons, Hall & Bodell, of Syracuse, N. Y. (Edward W. Hatch, Charles J. Hardy, Frederick P. Whitaker, and Frederick H. Gibbs, all of New York City, of counsel), for defendant and cross-defendant.

HAZEL, District Judge. This action in equity was brought by the American Car & Foundry Company against the Merchants' Despatch Transportation Company, for infringement of letters patent No. 707,-702, granted to Herbert R. Keithley August 26, 1902, for underframes for railway cars. On January 16, 1909, the said patent, and 20 other patents relating to railway cars granted to the petitioner at different dates, were assigned by him in writing to the complainant company. After the testimony in the original suit for infringement was fully taken, there was a continuance for argument and the submission of briefs, but in the meantime a petition was filed and served on the complainant company by the patentee, alleging in substance that he parted with title to the patent in suit, and the other patents mentioned, in pursuance of a gross fraud practiced upon him by the American Car & Foundry Company (hereinafter called the company), in obtaining from him said assignments and transfers for an inadequate consideration, in that at the time of the execution and delivery thereof the company concealed from him material facts which it was its duty to have disclosed, namely, that prior thereto it had actually manufactured and sold a large number of underframes for cars embodying the invention of the patent in suit, and praying for a cancellation of the assignments and reconveyance thereof to him, and for an accounting for damages. Afterwards affidavits in opposition to the petition having been submitted on behalf of the company and cross-defendant herein, and the interested parties having been heard, the petition to intervene was granted, and the petitioner, Herbert R. Keithley, made a party to this cause, later filing a cross-bill of complaint, to which answers were interposed. Proofs have since been taken thereon, and the paramount question now to be determined is whether the evidence equitably justifies setting aside the assignments of the patents on the ground that nothing was said by Wolff, the agent of the company, regarding the prior car construction for the Atchison, Topeka & Santa Fé Railway Company (hereinafter called the Santa Fé cars), which, according to the prima facie evidence in the original suit for infringement, drawn out on cross-examination of the expert witness Weisbrod, embodied the Keithley invention in suit. An answer to this question necessitates a brief recital of the material facts.

In 1904 the patentee, who was a prolific inventor in the art of steel car construction, went to the office of the company at St. Louis, intending to dispose of five car patents, including the underframe patent in suit, taking with him four blueprints of drawings of the patents. He met Ames, the assistant general manager of the company, and left with

him the blueprints, saying that he would like to have the company examine his car designs with a view to manufacturing them on a large basis or to controlling the patents. He was asked by Ames to return later. On a subsequent day he returned, and was shown into the office of the witness Wolff, then the chief mechanical engineer of the company, but nothing was said at this time germane to the subject now under discussion. On April 27th ensuing, he wrote to the company, from his residence in Chicago, that he would consider an offer for his car designs on a royalty basis with a cash payment, and Ames, on receipt of the letter, took the blueprints to McBride, the vice president of the company, calling his attention to the letter and the blueprints, which, as he testified, had in the interval remained folded on his desk. The company replied to the letter of the petitioner, stating that the car designs had been looked over carefully and with interest, but that the company did not care to negotiate for their control, and returned the blueprints to him. According to the petitioner, one of the blueprints included the design in controversy, but the company denies any knowledge thereof.

Nothing further to interest the company in the patents was done until 1908, when the patentee again went to the office of the company, intending to interest the witness Wolff (who he supposed at the time was an officer in a corporation engaged in constructing side frames for cars) in another patent for a side car frame which he wished to sell. He testifies that during his conversation with Wolff he was asked what he had done with his car patents, and was told that the company might make an offer for them if he would sell them cheaply enough. Wolff also stated that the company never expected to use them, and that, if they had had any use for them, they would have looked him up. Afterwards there were other conversations between them relative to the car side frame, but no particular reference was made to the car patents which the petitioner had offered to sell the company in 1904.

There is testimony to show that on a subsequent occasion, when the petitioner was at the office of the company, Wolff directed the patent attorney of the company to make a list of the Keithley patents from the Patent Office Gazette, and that later he handed to the petitioner copies of three patents, upon each of which was marked in lead pencil $100, stating that he would give $300 for the three; that the petitioner replied that he ought to have more money for them, whereupon Wolff offered $450 for the 21 patents, which was accepted. The assignments were "some time later" (January 16, 1909) executed and delivered by Keithley after an examination had been made and the titles found to be clear. Wolff's version of what occurred at the time of the bargain is somewhat at variance with Keithley's, but not as to important particulars. He testifies that he offered Keithley $300 for all his car patents, and that Keithley requested $500, and that they finally agreed on $450 for the lot.

The conversation leading up to the meeting of minds was most commonplace and devoid of discussion of the merits of the inventions. No reference was made to other car constructions or to the car frames manufactured by the company for the Santa Fé Railway Company, or to any extrinsic or intrinsic facts or circumstances which might bear upon

the value or practicability of the assigned patents. Efforts had previously been made by the petitioner to dispose of them to various other car manufacturers, but without success, and it is evident that, at the time of the assignment, he valued them at only a nominal figure. No misrepresentations as to their value or usefulness are claimed to have been made. Nothing was said by Wolff or any other representative of the company that may fairly be regarded as evasive or adroit either as to their value, their importance, or the use to which it was intended to put them, and the patentee made no inquiries in relation thereto. In my judgment it would not be proper from this interview to impute to Wolff a knowledge that the company had infringed the underframe patent in suit by the Santa Fé car construction, or to consider him as scheming and conniving to obtain control of it for a trifling sum. To persuade the court that an asset was acquired by fraud or deceit, there must be some overt act or some expression of a convincing nature indicative thereof.

[1] The general rule relating to the purchase of personal property is that no duty devolves upon one party to disclose to another any facts or information possessed by him regarding the value of any personal property he may wish to purchase, even though the vendor is ignorant of the true value and would not part with his property if he were fully apprised thereof. Fraud in the purchase of personal property must ordinarily rest upon mistake, misrepresentation, or upon acts tending to mislead another to his pecuniary loss. The mere forbearance to make disclosure to the vendor, who is ignorant of the value of his property, even though with intent to deceive him, does not furnish a basis for equitable relief by way of rescission. Cases abound in support of this principle, but their citation is unnecessary, in view of the contention that the general rule does not apply to the facts adduced at the trial.

[2] The petitioner's claim is that the relations between him and the company were of such a peculiar nature that there was a positive duty upon the latter, which it could not ignore, to disclose the fact of the building of the 2,500 Santa Fé cars, and that silence in relation thereto affords sufficient ground in equity for canceling the assignments, particularly the assignment which is the subject of this controversy. The general rule of disclosure in relation to material facts no doubt has exceptions, as, for instance, where there is a relationship of trust and confidence between the parties, making it obligatory upon one to impart full information to the other, and giving the other a right to expect full information. In such cases the intentional withholding of information may amount to fraud and be subject to reparation in equity. In Doyle v. Union Pac. Ry. Co., 147 U. S. 413, 13 Sup. Ct. 333, 37 L. Ed. 223, Mr. Justice Shiras, speaking of exceptions to the general rule, substantially says that one party must make disclosure to the other only where there is a trust relationship, "such as where the contracting party is at a distance from the object of negotiation, when he necessarily relies on full disclosure," or "where, being present, the buyer put the seller on good faith by agreeing to deal

only on his representations." And then quoting Atkinson on Marketable Titles, 134:

"The vendor and vendee, in the absence of special circumstances, are to be considered as acting at arms length." "When the means of information as to the facts and circumstances affecting the value of the subject of sale are equally accessible to both parties, and neither of them does anything to impose upon the other, the disclosure of any superior knowledge which one party may have over the other is not requisite to the validity of the contract."

And it is urged that the asserted infringement was such an act as would manifestly be exclusively within the knowledge of the company, and that the concealment thereof falls within the exceptions to the general rule. But upon careful reading of the testimony I find nothing which makes this exception apposite to the present case.

It is shown that the order for the construction of the Santa Fé cars came from the National Dump Car Company in 1907, and that they were manufactured from sketches, drawings and specifications furnished by said company. The American Car & Foundry Company did not intentionally or consciously adapt to such cars the design of the Keithley patent. The underframe used therein was designed by one Posson, who filed an application for patent on March 9, 1907, which was granted June 10, 1913, and numbered 1,064,004. It would make an important difference, I think, if the design or drawings for the cars had been furnished by the company, for then the inference might fairly be drawn that it intentionally appropriated the design in suit, which had been submitted to it for purchase in the year 1904. The Posson photographs in evidence indicate the use of floor beams extending through side sills, as in the Keithley construction, but, as three years had elapsed since the company had had its attention directed to the latter, the presumption is not warranted that either McBride or Wolff, the representatives of the company, had it in mind at the time of building the Santa Fé cars or connected it with such building when buying the patents in suit. Indeed, the absence of wrongful intent is clearly indicated by the fact that, after the assignments were delivered, the company, in its efforts to obtain a standard type of underframe, experimented with a type designed by one of its engineers, and that only after the rejection of this design did it try out and adopt the Keithley type. Wolff's letter in evidence, written in 1910 to the general sales agent of the company, states that the Keithley design had not before been constructed, but that arrangements were under way to build a sample car underframe in conformity therewith. This would seem to be corroboratory of the assertion that the Santa Fé construction had no connection in his thoughts with the negotiation for the Keithley patents. It is true there was testimony to the effect that the Keithley underframe was a radical departure from prior constructions, which would tend to impress it upon the minds of the representatives of the company, and this fact might justify a suspicion of bad faith, but a mere suspicion has never arisen to the dignity of sustaining an accusation of fraud. As to the reason for buying the Keithley patents, it was explained that in the year 1908 the company,

in connection with its business, inaugurated a research department to keep files of patents relating to steel cars and underframes, and adopted a policy of purchasing such patents as it was thought might prove desirable.

Although it seems to have been taken for granted that the Keithley design was a distinct departure from the prior art, yet at the trial, to prove infringement by the Merchants' Despatch Transportation Company, novelty was strongly contested. The defendant's expert witnesses testified that structures, substantially like that under consideration, were not new to the art; that the use of longitudinal center sills and side sills in underframes was old; and that transoms connecting the center sills with the side sills were in their opinions disclosed in several prior patents. In view of such testimony, it is difficult to conceive of how the company is chargeable with knowledge of the asserted infringement. The proofs are wholly insufficient to warrant the finding of fraud or deceit, either actual or constructive, misleading the patentee to his disadvantage, and inducing him to make the assignments in question. In this connection, Jones on the Law of Evidence substantially says that, while it is true that fraud may be inferred from circumstantial evidence as well as from what the parties say and do, still the party alleging fraud or deceit must adduce stronger proof than would suffice to establish a mere debt or sale; and that where the facts arising out of a business transaction admit of two interpretations, one pointing to innocence and the other to dishonesty of intention, unless the evidence predominates in favor of the latter, the court will adopt the interpretation consistent with honest and fair dealing.

Importance is also attached to the case of Files v. Rankin, 153 Fed. 537, 82 C. C. A. 491, relating to fraudulent concealment by the purchaser, of the existence of certain collateral of which the receiver had no knowledge, which enhanced the value of the judgment sold, and because the latter lived at a distance, necessitating negotiating by correspondence, it was properly held that misrepresentations made by the purchaser in the correspondence amounted to fraud and deceit, entitling the seller to rescission of the sale, but neither the facts nor circumstances of this case are similar to those of the case at bar.

It is next contended that inadequacy of price, coupled with inequitable circumstances, is sufficient for canceling or annulling an assignment, but it is unnecessary to attempt an analysis of the adjudications cited in the petitioner's brief on this point, for I believe the law to be that it must be proven that an undue advantage was taken of the owner of the property to induce him to part with it at an unconscionably low figure. To justify a setting aside of the assignment, there should be cogent facts and circumstances amounting to fraud or deceit. The record in this case is devoid of any such disclosure of impropriety of conduct of that nature. It is true, as contended, that gross inadequacy alone, "such as would shock a correct mind," may sometimes convince a court of equity of the righteousness of annulling a transfer or bargain, but such a decree is usually based upon the character of the transaction and upon the fact that gross inequality

furnishes a "most vehement presumption of fraud." Graffam v. Burgess, 117 U. S. 180, 6 Sup. Ct. 686, 29 L. Ed. 839; Dunn v. Chambers, 4 Barb. (N. Y.) 376; Story's Eq. Jur. § 246. But any such rule cannot safely be applied to patent rights possessing doubtful value, for as said Judge Coxe in E. Bement & Sons v. La Dow (C. C.) 66 Fed. 185, in speaking of the uncertainty of the value of patents, there is "no property more speculative in character or held by a more precarious tenure." Therefore the English cases (Fox v. Mackreth, 2 Brown's Ch. 400; Turner v. Harvey, 1 Jacob's Rep. 169; and Phillips v. Homfray, L. R. 6 Ch. App. 770), cited by the petitioner, involving misrepresentations or suppression of facts regarding the value of real estate sold, have no decided application here.

It is true that Keithley sold his patents for a trifling sum, but he was a man of discernment and qualified to personally negotiate for the sale of his inventions, and the record shows that he did so negotiate, not only with the company, but with various other car manufacturing companies. The value of his underframe invention, because of the art to which it belonged, depended altogether upon his success in interesting a car manufacturer in its exploitation, and what has since been done to enhance its value is not an indication of its value at the time of the assignment. From his selling his patents at a nominal figure, the presumption obtains that he did not value them highly, in view of his previous unsuccessful efforts to dispose of them. Considering that the company expended large amounts of money and labor in the exploitation of the patent in controversy, and is conducting an infringement suit against the Merchants' Despatch Transportation Company for infringement thereof, it is obvious that it would be difficult to put the parties back in statu quo by a rescission of the assignments, while, on the other hand, to refuse rescission will not deprive the petitioner of protection, for, if the company did in fact infringe his patent before purchasing it, he has a full and complete remedy without recourse to the equitable relief sought herein.

The question of laches and good faith on the part of the petitioner was also extensively discussed at the hearing, but, in view of the foregoing, the question need not be passed upon or decided.

A decree may be entered in favor of the cross-defendants dismissing the cross-bill, with costs.

## On Rehearing.

The effect of the opinion heretofore filed herein was to dismiss the cross-bill filed by Keithley; his allegation of infringement by the construction of the 2,500 Santa Fé cars being considered as merely incidental to the gravamen of the cross-bill, which was a request for the rescission of the assignment of his patents to the American Car & Foundry Company on the ground of fraud or deceit in their procurement. Whether such cars were actually infringements of the patent was not decided, and upon that question the car company has not had its day in court, although it was perhaps not seriously disputed that the said cars were of the same type of construction as Keithley's. Accordingly the issue which is now put forward would seem to be col-

lateral to the object of the cross-bill, to which a cross-answer was filed by the American Car & Foundry Company. Modifying the decision as requested would bring into the case new issues, which would entitle Keithley, if his allegations of infringement are proven, to a totally different relief from that demanded by the cross-bill. Reliance is placed upon rule 23 of the new equity rules (198 Fed. xxiv, 115 C. C. A. xxiv), which substantially provides that matters ordinarily determinable at law arising in equity suits shall be determined in the same suit according to the principle applicable without transferring the case to the law side of the court; but in this case the cross-complainant now desires the consideration of the court, not only on the question of infringement, but also on the question of an accounting for profits and damages which are peculiarly matters of equity jurisdiction.

[3] There is another point which, in my opinion, is inimical to cross-complainant's contention, and that is that the American Car & Foundry Company is entitled to the interposition of an original bill charging infringement by it, and under the authorities a cross-bill cannot be made an original bill in the same cause of action, unless the subject-matter is germane to the original bill, which is not here thought to be the case.

Petition for rehearing or modification of the decision is denied.